**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CHARLES HAINES, | : | |
| | : | |
| Plaintiff, | : | Civil No. 07-5387 (SRC) |
| | : | |
| v. | : | |
| | : | |
| JACK DOES 1-40, et al., | : | **O P I N I O N** |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

> CHARLES HAINES, Plaintiff Pro Se
> Special Treatment Unit
> Avenel, New Jersey 07001

**Stanley R. Chesler, District Judge**

This matter comes before the Court upon submission of an amended complaint ("Amended Complaint") by Plaintiff CHARLES HAINES ("Haines"). See Docket Entry No. 4. For the reasons stated below, Haines' Amended Complaint will be dismissed without prejudice. Haines will be granted leave to re-amend his Amended Complaint.

**BACKGROUND**

**I.    ORIGINATION OF THE INSTANT ACTION**

On September 21, 2007, the Clerk received the complaint

("Original Complaint") docketed as Entry No. 1 in the Civil
Action Banda v. Corzine, 07-4508 (WJM) ("Banda Matter"), as well
as Entry No. 1 in the instant matter.  The Original Complaint
asserted claims on behalf of numerous plaintiffs ("Plaintiffs"),
with Haines being one of them.[1]  See Docket Entry No. 1.  On
November 1, 2007, Judge Martini, presiding over the Banda Matter,
issued an Order and accompanying Opinion ("November Order and
November Opinion") dismissing the Original Complaint and
terminating the Banda Matter.  See instant matter, Docket Entries
Nos. 2, 3.  Pursuant to Judge Martini's November Order, all
Plaintiffs other than Plaintiff Banda were terminated as
Plaintiffs in the Banda Matter, and the Clerk opened individual
matters for each of these Plaintiffs, Haines being one of them.
See id.  In addition, pursuant to Judge Martini's November Order,
Haines' claims contained in the Original Complaint were dismissed
without prejudice, and Haines was granted leave to amend the
Original Complaint.  See id.

     On November 30, 2007, Haines submitted his Amended
Complaint, together with an application for appointment of pro
bono counsel.  See Docket Entry No. 4, 5.  Consequently, this

---

[1] Plaintiffs are a group of involuntarily civilly-committed
persons, pursuant to the Sexually Violent Predator Act ("SVPA"),
N.J. Stat. Ann. § 30:4-27.24, et seq., and confined at the
Special Treatment Unit Annex, Avenel, New Jersey ("Facility").
Plaintiffs "self-certified" themselves into a "class" for the
purpose of filing their original complaint.  See Docket Entry No.
1.

Page -2-

Court directed the Clerk to reopen the instant matter for the purpose of screening Haines' Amended Complaint. See Docket Entry No. 7.

## II. HAINES' ALLEGATIONS

### A. Allegations Stated in the Original Complaint

This Original Complaint submitted by Plaintiffs alleged that, on August 30, 2007, Plaintiffs' constitutional rights were violated by one hundred and eight defendants.[2] See Docket Entry No. 1. The allegations set forth in the Original Complaint fell into two categories: (1) those common to all Plaintiffs; and (2) those based on the circumstances particular to--and, therefore, presenting claims unique to--individual Plaintiffs. See id. The allegations common to all Plaintiffs were summarized by Judge Martini as follows:

> According to Plaintiffs, the chain of August 30th events started at 8:25 A.M. with the appearance of an unnamed corrections officer, who was "with a 'gun.'" Allegedly, five minutes later, at 8:30 A.M., Plaintiffs . . . were "ordered to the Dayroom [and] told to line

---

[2] The list of original Defendants was as follows: Defendant Jon Corzine, Governor of the State of New Jersey; Defendant George Hayman, Commissioner of New Jersey Department of Corrections; Defendant Bernard Goodwin, Administrator of the Facility; Defendant Cindy Sweeney, Assistant Superintendent of the Facility; Defendant Anne Milgram, Attorney General for the State of New Jersey; Defendant Merrill Main, Clinical Director of the Facility; Defendant Tina Spanuolo, Supervising Program Specialist at the Facility; and one hundred John/Jack/Joan/James/Jane Doe Defendants, who are corrections officers or public advocates employed by the State of New Jersey, as well as Defendant John Doe, who is a "Regional Commander of Department of Corrections." See id. (caption).

up and face the wall, [and] keep eyes forward."

Plaintiffs allege that, five minutes later, they were
"pat-searched and led to the Rec[reation] Yard."  Seven
minutes after they entered the recreation yard,
Plaintiffs were handed cups and served with,
approximately, half-a-cup of water per person.  From
this point on, water was re-served to Plaintiffs on
half-an-hour or hourly basis, although Plaintiffs were
finding the supply of water insufficient, and the water
itself insufficiently chilled.

According to Plaintiffs, at 8:45 A.M., that is,
thirteen minutes after Plaintiffs were removed into the
recreation yard, the Facility officials brought
drug-sniffing canines into the Facility and began a
search for controlled substances; the search inside the
Facility continues for one hour and twenty-two minutes,
and it was followed by a one hour and thirteen minutes
search of the external parts of the Facility and
adjoining trailers.  After the search was completed,
Plaintiffs were ordered to line up in the recreation
yard . . . and, fifteen minutes later, an unspecified
number of [Plaintiffs] . . . was brought into the
Facility for lunch.  About half an hour later, another
group of [Plaintiffs] . . . was brought into the
Facility for lunch.  The remaining [Plaintiffs] . . .
were brought into the Facility to consume lunch in
unspecified sub-groups and time increments, with the
last Detainee being brought into the Facility no later
than at 1:25 P.M., that is, about two hours after the
entire lunch service started.  Plaintiffs assert that
Plaintiffs experienced "intimidation" during their
return to the Facility as a result of a "show of force"
which ensued from the fact that the Facility officers
were "holding . . . 'Riot Guns.'"

Plaintiffs assert that, within three to four minutes
after the [final third of Plaintiffs] entered the
Facility, [the other two-thirds of Plaintiffs] were
allowed access to their sleeping quarters, while the
[final group], which continued consuming lunch meals,
remained in the Mess Hall.  Plaintiffs also alleged
that, about ten minutes after the [first two thirds of
Plaintiffs] were allowed access to their sleeping
quarters, [they] . . . were denied (a) access to
bathrooms for the period of five minutes, and (b)
access to showers for about ten minutes.  The . . .

"Dayroom" and Mess Hall became . . . available for
regular use by [Plaintiffs] one hour and twelve minutes
after all [Plaintiffs] returned to the Facility.

Banda Matter, Docket Entry No. 3, at 3-6 (citations and footnotes

omitted).  In addition, Judge Martini's November Opinion

summarized allegations unique to each Plaintiff.  See id. at 6-

11.  With respect to Haines, Judge Martini noted that the

Original Complaint alleged that

five minutes after being brought into the recreation
yard, Plaintiff Haines "g[o]t [a] mild [h]eart [a]ttack
and [was] rushed to see [a] [n]urse."  Apparently,
Plaintiff Haines was treated by a nurse and was able to
return to the recreation yard sometime before 12:15
P.M. However, Plaintiff Haines experienced his second
"mild heart attack" and was taken to see a nurse at
8:30 P.M., about seven hours after all [Plaintiffs]
were returned in the Facility.

Id. at 7-8 (citations omitted).


## B.  Judge Martini's Treatment of the Original Complaint

Responding to Plaintiffs' common claims that

the search for controlled substances performed by the
Facility officials was an "unlawful 'prison' search"
impermissible with respect to involuntarily
civilly-committed [Plaintiffs] [as well as to
Plaintiff's allegations that] the search . . . amounted
to a cruel and unusual punishment . . . since: (a)
"there was [n]o shade in the [recreation] yard with the
exception of a small tent[,] which could not
accommodate" [everyone in the yard]; (b) [the outside
temperature was] 90 to 95 degree[s]. . . "; (c)
re-servings of water to [Plaintiffs] was no more
frequent than every half an hour and the water served
was "usually warm"; and (d) corrections officers
"brandished M-16 style guns with individualized mace
balls, [and] other weapons[,] such as batons and night

sticks[,] were also brandished[,]"
id. at 12, Judge Martini dismissed these allegations for failure
to state a claim upon which relief may be granted.  See id. at
21-36.

Addressing Plaintiff's Fourth Amendment claims, Judge
Martini explained that, pursuant to Hudson v. Palmer, 468 U.S.
517, 530 (1984), and Bell v. Wolfish, 441 U.S. 520, 558-560
(1979), the search of the Facility was not "illegal," because
"Plaintiffs' expectations of privacy yield to the Facility
officials' legitimate governmental interests to ensure that the
Facility remains free of controlled substances."  See Docket
Entry No. 3, at 22-23.  With respect to Plaintiff's due process
claims, Judge Martini subdivided Plaintiffs' allegations into
three groups: (1) those challenging Plaintiffs' conditions of
confinement; (2) those asserting verbal and "visual" harassment;
and (3) those related to Plaintiffs' medical conditions.  See id.
at 23-36.  Judge Martini clarified to Plaintiffs that acts or
verbal (or "visual") harassment cannot, on their own, serve as a
basis to cognizable constitutional challenges.  See id. at 30-31.


Addressing Plaintiffs' medical claims, Judge Martini first
detailed to Plaintiffs the applicable standard and then addressed
their substantive claims.  See id. at 32 (citing Rhodes v.
Chapman, 452 U.S. 337, 346-47 (1981); Estelle v. Gamble, 429 U.S.

97 (1976); and <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir.
1999)).  While Judge Martini dismissed the bulk of Plaintiffs'
medical claims with prejudice, <u>see</u> <u>id.</u> at 33-35, he stated, with
respect to Haines' claims, that

> the [Original] Complaint is not clear as to the medical
> needs, and treatment of those needs by the Facility's
> medical personnel (or the hospital personnel), with
> respect to . . . Plaintiffs [like Haines].  While it
> appears that these . . . Plaintiffs were availed to
> immediate attention by the corrections officials when
> these . . . Plaintiffs developed their ailments and/or
> medical conditions, the Complaint fails to specify
> whether . . . Haines['] . . .  secondary occurrences of
> [his] medical condition [was] caused by the nurse's
> failure to provide . . . Haines . . . with any
> treatment during [his] initial medical conditions (or
> by unjustified undue delays in medical services).

<u>Id.</u> at 35.

Consequently, Judge Martini granted Haines leave to amend
the Original Complaint by clarifying Haines' claims.  <u>See</u> <u>id.</u> at
62.

Next, with respect to Plaintiffs' conditions of confinement
claims, Judge Martini explained to Plaintiffs that the Third
Circuit established a two-part test reading as follows:

> we must ask, first, whether any legitimate purposes are
> served by these conditions, and second, whether these
> conditions are rationally related to these purposes.
> In assessing whether the conditions are reasonably
> related to the assigned purposes, we must further
> inquire as to whether these conditions "cause [inmates]
> to endure [such] genuine privations and hardship  over
> an extended period of time, that the adverse conditions
> become excessive in relation to the purpose assigned to
> them."

<u>Id.</u> at 25 (quoting <u>Union County Jail Inmates v. Di Buono</u>, 713

F.2d 984, 992 (3d Cir. 1983)).  Taking judicial notice of the weather conditions existing in Plaintiffs' locale during the hours at issue,[3] Judge Martini concluded that, being placed in the Facility's recreation yard for three to five hours on a summer morning, when the weather conditions were mild, could not amount to a "hardship over an extended period of time," or to "adverse conditions" excessive in relation to the purpose of keeping Facility detainees outside the Facility during a legitimate search for controlled substances.  See id. at 26-27. Consequently, Judge Martini dismissed all Plaintiffs' conditions of confinement common claims.

Finally, turning to the issue of whether to certify Plaintiff's class, Judge Martini explained that the Original Complaint provided him with no basis for such certification, pursuant to the standard set in Rule 23, see id. at 36-51, and denied certification while observing that a court should be

> mindful of the fact that it is all too easy for one
> inmate with some purported knowledge of the law to
> persuade others to join a complaint, whether or not it
> is in the best interests of the others to do so.

Id. at 38 (citing Swenson v. MacDonald, 2006 U.S. Dist. LEXIS 5784, at *5-6 (D. Mont. Jan. 30, 2006)).  Judge Martini, therefore, dismissed the Original Complaint for failure to state

---

[3] The weather conditions were as follows: temperature varied between 72 and 84.5 degrees Fahrenheit, humidity was 61 percent, and western wind varied from 3.5 to 6.9 mph.  See Docket Entry No. 3, at 26.

a claim upon which relief may be granted and, in addition,
enjoined the Clerk from opening any new matters in which
Plaintiff Banda sought to act as a pro se in forma pauperis
plaintiff asserting a civil rights violation without first
obtaining leave of the Court.  See Docket Entries Nos. 3, 4.

### C.    Content of Haines' Amended Complaint

On November 30, 2007, Haines submitted his Amended
Complaint.  See Docket Entry No. 4.  The Amended Complaint is a
nine-page document naming, as Defendants, "John Doe, Regional
Commander of the Department of Corrections Special Operations
Group" and Jack Does, 1-40, as well as Joan Doe, 1-40, who are
"Department of Corrections Special Operations Group Correctional
Officers."  See id. at 1, caption.  Following the caption, the
Amended Complaint includes: (a) 5 paragraphs of self-typed
(rather then pre-printed) "Instructions," see id. at 1; (b) two
pre-printed pages of instructions titled "Form to Be Used by a
Prisoner in Filing a Civil Rights Complaint," see id. at 2-3; (c)
self-typed list of parties named in the Amended Complaint
asserting that the Defendants in this action "gave unprofessional
errors of judgement and gross negligence in ordering and
enforcing the removal of all [Facility detainees] from the . . .
[b]uilding to stay out in [h]ot [s]un for approx[imately six and
a half] hours," see id. at 4-5; (d) self-typed section titled

"Statement of Claims" consisting of 29 paragraphs, see id. at 5-9; and (e) a request for relief in the amount of $815 million in damages, where $15 million are sought from Defendant "John Doe, Regional Commander of the Department of Corrections Special Operations Group," and $10 million are sought from each Joan and/or Jack Doe, who are "Department of Corrections Special Operations Group Correctional Officers."  See id. at 9.

Short of four exceptions detailed below, all parts of the Amended Complaint are substantively identical to the corresponding parts of the Original Complaint.  Cf. Docket Entries Nos. 1, 4. Moreover, short of the same four exceptions, the Amended Complaint is substantively and literally identical to: (a) an "amended complaint" submitted by Plaintiff Banda ("Banda's Complaint") and construed by Judge Martini as Plaintiff Banda's motion for reconsideration of the November Order, see Banda Matter, 07-4508, Docket Entries Nos. 6, 7; and (b) other "amended complaints" filed by Plaintiffs with this District and assigned, inter alia, to this Court.  See e.g., Williams v. Jack Does 1-40, 07-5395 (SRC), Docket Entry No. 4 ("Williams' Complaint").  These four exceptions excluded, Haines' Amended Complaint repeats, nearly verbatim, the allegations that were addressed by Judge Martini and dismissed, for failure to state a claim, in Judge Martini's November Order and November Opinion.

The sole difference between Haines' Amended Complaint and

Banda's Complaint or Williams' Complaint is limited to four
entries, namely:

(1)   the statement that Defendant John Doe, Regional Commander,
      "gave unprofessional errors of judgement and gross
      negligence in ordering and enforcing the removal of all
      [Facility detainees] from the . . . [b]uilding to stay out
      in [h]ot [s]un for approx[imately six and a half] hours"
      ends with the phrase "which . . . caused injury to [Haines
      because] this removal [to the recreation yard] caused stress
      that brought on a mild [h]eart [a]ttack, then later in the
      day, due to a heat stroke, brought on another mild [h]eart
      [a]ttack."[4]  Docket Entry No. 4, at 4.

(2-3) The above phrase is repeated two more times, once with
      respect to Defendants Joan Does, and once with respect to
      Defendants Jack Does, all of whom are "Department of
      Corrections Special Operations Group Correctional Officers."
      See Docket Entry No. 4, at 4-5.

(4)   Paragraph of the "Statement of Claims" Section alleges that,
      on August 30, 2007, Haines

              suffered a mild [h]eart [a]ttack [and] slowly
              rushed to the [n]urse station by [unspecified Jack
              and/or Joan Doe Defendants][5] to be seen by the

      _____

          [4] Haines' Amended Complaint does not clarify the meaning of
      the term "mild heart attack."  See generally, Docket Entry No. 4.

          [5] The Amended Complaint does not clarify the meaning of the
      term "slowly rushed."  This Court presumes that the term is used

> [n]urse for there was [n]o doctor on duty, [and]
> the [n]urse treated [Haines], and at
> approx[imately] 12:30 P.M. [Haines] was given
> permission to return to [the Facility] to rest,
> but . . . was led to the [recreation yard] instead
> . . . . [At] 8:30 P.M. [Haines suffered] another
> mild [h]eart [a]ttack from [h]eat [s]troke.

Id. at 6-7.


   D.   **Haines' Amended Complaint Fails to State a Claim**

     Short of the four entries detailed in the preceding Section

of this Opinion, the Amended Complaint repeats the allegations

made in the Original Complaint and dismissed by Judge Martini for

failure to state a claim upon which relief may be granted.  Judge

Martini's ruling will not be disturbed by this Court: Haines

cannot get a "second bite on the apple" by merely reiterating the

dismissed claims.  Therefore, this Court's analysis will be

limited to the allegations made in the four entries detailed in

the preceding Section of this Opinion.


        1.   **Due Process Claims**

     Since "the Due Process rights of a pre-trial detainee are at

least as great as the Eighth Amendment protections available to a

convicted prisoner," Reynolds v. Wagner, 128 F.3d 166, 173 (3d

──────────────────

to express the opinion of the drafter of the Amended Complaint
(who may or may not be Haines) that Haines was delivered to the
office of the Facility's nurse with speed that the drafter of the
Amended Complaint found less than exemplary.

Cir. 1997) (citation omitted); <u>see also</u> <u>Bell</u>, 441 U.S. at 544;

<u>City of Revere v. Massachusetts</u>, 463 U.S. 239, 244 (1983), the

Eighth Amendment sets forth the floor for the standard applicable

to the claims of civilly-committed or pre-trial detainees.  <u>See</u>

<u>Bell</u>, 441 U.S. at 544.  Thus, a failure of prison officials to

provide minimally civil conditions of confinement to pre-trial or

civilly-committed detainees, or deliberate indifference to

serious medical needs of such detainees, violates their right not

to be punished without due process of law.  <u>See</u> <u>Reynolds</u>, 128

F.3d at 173-74; <u>Monmouth County Corr. Inst. Inmates v. Lanzaro</u>,

834 F.2d 326, 345-46, n.31 (3d Cir. 1987), <u>cert. denied</u>, 486 U.S.

1006 (1988); <u>see also</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976);

<u>Farmer v. Brennan</u>, 511 U.S. 825 (1994).

Analysis of whether a civil detainee has been deprived of

liberty without due process is governed by the standards set out

by the Supreme Court in <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979).

<u>Fuentes</u>, 206 F.3d at 341-42.

> A court must decide whether the disability is imposed
> for the purpose of punishment or whether it is but an
> incident of some other legitimate governmental purpose.
> Absent a showing of an expressed intent to punish on
> the part of detention facility officials, that
> determination generally will turn on "whether an
> alternative purpose to which [the restriction] may
> rationally be connected is assignable for it, and
> whether it appears excessive in relation to the
> alternative purpose assigned [to it]."  Thus, if a
> particular condition or restriction of [civil]
> detention is reasonably related to a legitimate
> governmental objective, it does not, without more,
> amount to "punishment."  Conversely, if a restriction

> or condition is not reasonably related to a legitimate
> goal--if it is arbitrary or purposeless--a court
> permissibly may infer that the purpose of the
> governmental action is punishment that may not
> constitutionally be inflicted upon detainees <u>qua</u>
> detainees.[6]

441 U.S. at 535-39 (citations omitted).

Thus, conditions of confinement, which involve an unnecessary and wanton infliction of pain or risk of harm, amount to a violation of a pre-trial or involuntarily civilly-committed detainee's constitutional rights.  <u>Accord</u> <u>Rhodes</u>, 452 U.S. at 346, 347.  However, the definition of "unnecessary and wanton infliction of pain" is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society."  <u>Id.</u> at 346 (quoting <u>Trop v. Dulles</u>, 356 U.S. 86, 101 (1958)).  Therefore, if a detainee asserts a conditions of confinement claim alleging denial of medical care, the detainee must show that the defendants were deliberately indifferent to his/her serious medical needs.  <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97; <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d

---

[6] The government has legitimate interests that stem from its need to maintain security and order at the detention facility. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." <u>Bell</u>, 441 U.S. at 540.  Retribution and deterrence, however, are not legitimate non-punitive governmental objectives.  <u>See</u> <u>id.</u> at 539 n.20.  Nor are grossly exaggerated responses to genuine security considerations.  <u>See</u> <u>id.</u> at 539, 561-62 and n.20.

Cir. 1999).  Persistent severe pain qualifies as a serious
medical need.   A medical need is also serious where it "has been
diagnosed by a physician as requiring treatment or is . . . so
obvious that a lay person would easily recognize the necessity
for a doctor's attention."  Lanzaro, 834 F.2d at 347.

    "Deliberate indifference" exists "where [a] prison official:
(1) knows of a prisoner's need for medical treatment but
intentionally refuses to provide it; (2) delays necessary medical
treatment based on a non-medical reason; or (3) prevents a
prisoner from receiving needed or recommended medical treatment."
Rouse, 182 F.3d at 197; Durmer v. O'Carroll, 991 F.2d 64 (3d Cir.
1993).  Deliberate indifference is also evident where officials
erect arbitrary and burdensome procedures that result in
interminable delays and denials of medical care to suffering
inmates.  See Lanzaro, 834 F.2d at 346-47. However, a refusal to
consider inmate's self-diagnoses or to summon the medical
specialist of the inmate's choice cannot amount to cruel and
unusual punishment.  See White v. Napoleon, 897 F.2d 103 (3d Cir.
1990).


### 2.   The Shortcomings of the Amended Complaint

    Haines' thrice repeated allegation that Defendants "gave
unprofessional errors of judgement and gross negligence in
ordering and enforcing the removal of all [Facility detainees]

from the . . . [b]uilding to stay out in [h]ot [s]un for
approx[imately six and a half] hours," and that "unprofessional
errors of judgement and gross negligence . . . caused injury to
[Haines because] this removal [to the recreation yard] caused
stress that brought on a mild [h]eart [a]ttack," Docket Entry No.
4, at 4-5, fails to state a cognizable constitutional claim.
Nothing in this allegation indicates that Defendants sought to
inflict unnecessary and wanton pain on Haines when Defendants
removed all the Facility detainees into the Facility recreation
yard in order to conduct a Facility-wide search for controlled
substances.  Rather, it appears apparent that Defendants were
pursuing a legitimate goal reasonably related to the Facility's
governmental penological interests.  Moreover, nothing in Haines'
allegation indicates that Defendants were deliberately
indifferent to the risk of harm to Haines' health when they
removed all the Facility detainees into the Facility recreation
yard, since the Amended Complaint does not state any fact
suggesting that: (a) Haines (or any other person or entity)
notified Defendants of the possibility that Haines' health might
be at risk if he is removed to the recreation yard; and (b) it
would be obvious to a lay person that being in the recreation
yard during a summer morning posed a risk to Haines' health.  See
generally, Docket Entry No. 4.

Haines' allegations that he was "slowly rushed to the

[n]urse station by [unspecified Jack and/or Joan Doe Defendants]"
similarly do not state a claim, since the potential "delay" in
Haines' treatment ensuing from the alleged "slow rushing" does
not qualify as a "delay of necessary medical treatment based on a
non-medical reason" within the meaning of the constitutional
test.  See Andujar v. Rodriguez, 486 F.3d 1199, 1204 (11th Cir.
2007) (a two-hour delay in the detainee's receipt of stitches is
a tolerable delay that cannot qualify as a constitutional
violation) (citing Harris v. Coweta County, 21 F.3d 388, 393-94
(11th Cir. 1994)); compare Natale v. Camden County Corr.
Facility, 318 F.3d 575 (3d Cir. 2003) (finding a possibility of
constitutional violation where an insulin-dependent diabetic was
denied insulin for twenty-one hours); Archer v. Dutcher, 733 F.2d
14 (2d Cir. 1984) (allegation that emergency medical care to
pregnant inmate  was delayed for five hours states a claim of
deliberate indifference).  Here, Haines' use of the word "rushed"
in the phrase "slowly rushed to the [n]urse" indicates that
Haines was delivered to the nurse from the recreation yard within
minutes, rather than hours, after he suffered from his medical
condition.  Therefore, Haines' allegations associated with "slow
rushing" fail to state a cognizable claim.

Haines' allegations that he was "seen by the [n]urse for
there was [n]o doctor on duty" similarly fail to state a claim.
See, e.g., Pilkey v. Lappin, 2006 U.S. Dist. LEXIS 44418, at *37

(D.N.J. June 26, 2006) (noting that there is no constitutional right to "have a doctor at Plaintiff's disposal around the clock," and citing McNeil v. Redman, 21 F. Supp. 2d 884 (C.D. Ill. 1998), for the proposition that there is "no constitutional right to see a doctor on demand; the decision whether to summon a doctor, like the question of whether a certain diagnostic technique or form of treatment should be prescribed, 'is a classic example of a matter for medical judgment,'" quoting, in turn, Estelle, 429 U.S. 97).

Finally, the statement that Haines "was given permission to return to [the Facility] to rest, but . . . was led to the [recreation yard] instead," Docket Entry No. 4, at 7, also appears to be an allegation failing to state a claim, since this language suggests that the nurse advised Haines that he should return to the Facility to rest, and Defendants were not notified of the risk to Haines' health in the event Haines remains in the recreation yard and, thus, could not have acted with "intent to inflict unnecessary and wanton pain" to that risk.  Indeed, the Amended Complaint provides this Court with no fact indicating otherwise, and Haines' identification of Defendants as "John Doe, Regional Commander of the Department of Corrections Special Operations Group" and Jack Does, 1-40, as well as Joan Doe, 1-40, who are "Department of Corrections Special Operations Group Correctional Officers," only verifies lack of cognizable claim

since, had any Defendant been notified by either Haines or any other person of Haines' health-risk-based need to be removed from the yard into the Facility, and yet elected to inflict unnecessary and wanton pain upon Haines by returning Haines to the yard, Haines would be able to identify, or at least describe, the such Defendant.

However, the actual language of Haines' Amended Complaint appears to be unreliable in view of excessive and suspicious similarities between the language used in Haines' Amended Complaint and that in the Original Complaint, as well as in Banda's Complaint and Williams' Complaint. Taking note of Judge Martini's observation that "the court should be mindful of the fact that it is all too easy for one inmate with some purported knowledge of the law to persuade others to join a complaint," Banda Matter, 07-4508, at 38, this Court expresses its grave concern about the possibility that Haines' instant litigation is being hijacked by one of the original Plaintiffs (who may or may not be Plaintiff Banda, who is enjoined, by Judge Martini, from future meritless pro se in forma pauperis filings with this District). Therefore, this Court is reluctant to find, conclusively, that Haines' allegations cannot state a cognizable claim. This Court, consequently, will dismiss Haines' Amended Complaint without prejudice and grant Haines, one more time, leave to re-amend his Amended Complaint by detailing the facts:

(a) known to Haines, personally, and serving as basis for Haines' impressions and/or beliefs; and (b) relating to Haines' discharge from the office of the Facility's nurse.  Specifically, this Court wishes to obtain a statement from Haines whether the medical advice given to Haines (<u>i.e.</u>, the advice to return to the Facility and avoid being in the recreation yard) was either conveyed by Haines or by any other person to any Defendant(s), directly or indirectly, or was given to Haines under the circumstances that were observed by any Defendant(s) and made the nature of this advice obvious to a lay person.

The Court stresses the fact that, while Haines may, if he actually so wishes, seek help from and/or consult with a licenced attorneys or discuss his case with unlicensed "jailhouse lawyers," or any of his acquaintances at the Facility and/or outside it for the purposes of this litigation as well as with respect to Haines' submission of his new amended complaint, it is Haines--and Haines alone--who is the master of his claims and the sole plaintiff in this action.


<u>**CONCLUSION**</u>

For the foregoing reasons, Haines' Amended Complaint will be dismissed without prejudice.  The Court will grant Haines leave to re-amend his Amended Complaint.

Haines' application for appointment of <u>pro</u> <u>bono</u> counsel is denied without prejudice.

An appropriate Order accompanies this Opinion.

    s/Stanley R. Chesler
_____
**Stanley R. Chesler**
**United States District Judge**

Dated: January 9, 2008